**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES CARR,

    Petitioner,

    v.

D.L. RUNNELS, Warden,

    Respondent.

No. C 03-1369 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. In response to the court's Order to Show Cause respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged supporting exhibits. Petitioner has responded with a traverse. The case is ready for decision.

## BACKGROUND

The California Court of Appeal summarized the underlying facts as follows:[1]

> On June 17, 1997, two passersby assisted Tommie Cain after his car jumped the median in the area of Seminary Avenue in Oakland. Cain fell out of the car holding his side, and said he had been shot at a nearby gas station. Cain also told a police officer who arrived on the scene that he had been shot by two black men. Cain died of his wounds.
>
> Three weeks later, an Oakland police officer stopped a vehicle with expired registration tags. Appellant, who was the driver, was arrested for possession of rock cocaine, and Jovan Reynolds was arrested for possession of a .38 caliber revolver. The gun was test fired at the police crime lab, and the bullets and casings were saved. In September 1998, a firearms identification expert matched them to a bullet taken from Cain's body.
>
> Upon learning of the match, Sergeant Longmire put out a bulletin to have appellant arrested on an outstanding misdemeanor warrant. Appellant was arrested and was interviewed at the police station on October 23, 1998, at approximately 3:00 a.m. After waiving his Miranda rights, appellant stated that he, Jovan Reynolds, and Carlos Vincent were driving around East Oakland looking for people to rob the night Cain was killed. Appellant held

---

[1] The footnotes from the opinion have been renumbered.

the first victim at gunpoint, while Vincent took his money and property. Later, they saw Cain talking on the telephone at a gas station. Vincent and Reynolds got out of the car to rob Cain, and appellant stayed in the car. Appellant heard a gun shot. When Vincent and Reynolds ran back to the car, appellant drove it away.[2] At 9:30 the next morning appellant repeated to a representative of the district attorney's office that he knew Reynolds and Vincent were going to rob Cain, but denied that he intended to play any part in the crime. Appellant did admit that he drove the car away from the scene. The prosecution also submitted a letter found by Jovan Reynolds's father in Reynolds's bedroom, which a handwriting expert testified bore appellant's signature. The author of the letter claimed that the gun found in the July 1997 vehicle stop of appellant and Reynolds belonged to appellant.[3]

Respondent's Ex. G (Unpublished Opinion of the California Court of Appeal, First Appellate District, People v. Carr, No. A094332 (June 10, 2002)) at 1-2 (hereinafter "Opinion").[4]

In 2000, an Alameda County jury convicted petitioner of first degree murder. He was sentenced to twenty-five years to life in state prison, with an additional one year consecutive term for gun use. On appeal, petitioner challenged the trial court's denial of his suppression motion. Concurrently, petitioner filed a petition for a writ of habeas corpus raising the claim of ineffective assistance of counsel in connection with the suppression motion. The appellate court affirmed the judgment and denied the writ on June 7, 2002. Petitions for review to the California Supreme Court were denied on August 28, 2002.

In the present federal habeas corpus petition petitioner claims that the trial court wrongly denied his motion to suppress, that the suppression hearing was constitutionally infirm because of alleged perjured testimony by the arresting police officer, and that counsel was ineffective for conceding that the entry of police into petitioner's home was lawful and for failing to investigate and discover inconsistent testimony by the arresting police officer.

//

---

[2] When Reynolds was interviewed he said that he was the one who drove them away from the scene.

[3] According to Sergeant Longmire's notes, appellant told him that Reynolds tried to get appellant to take the blame for everything found in the car.

[4] All referenced exhibits are those lodged by respondent in support of the answer to the petition, unless otherwise noted.

2

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2001), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). Section 2254(d)(2) applies to intrinsic review of a state court's process, or situations in which the petitioner challenges

3

the state court's findings based entirely on the state court record. *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004). The relevant question under § 2254(d)(2) is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the state court findings are supported by the record. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004).

Section 2254(e)(1) applies to challenges based on extrinsic evidence. *Taylor*, 366 F.3d at 1000. Under this section, a district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Conclusory assertions will not do. *Taylor,* 366 F.3d at 1000.

The state court decision to which 2254(d) applies is the "last reasoned decision" of the state court, *see Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, a federal court looks to the last reasoned opinion, in this case the opinion of the California Court of Appeal on appeal. *See Ylst*, 501 U.S. at 801–06.

**DISCUSSION**

A.  *Violation of the Fourth Amendment*

1.  *Background*

Following his arrest on October 23, 1998, petitioner waived his *Miranda* rights and made inculpatory statements. At his preliminary hearing, he argued that the statements should not be admitted because they were the fruit of an unlawful arrest. Specifically, he claimed that his nighttime arrest on a misdemeanor bench warrant was illegal both on statutory and Fourth Amendment grounds, because the warrant was not endorsed for nighttime service. The magistrate at the preliminary hearing denied the motion to suppress, finding that while there had been a statutory violation of California Penal Code section 840 pertaining to the proper time of arrest for a misdemeanor, the warrant was valid and petitioner's arrest did not violate his Fourth Amendment rights. Therefore, the

4

statements need not be excluded. Ex. A at 225-26.

Petitioner then moved to dismiss the indictment against him on the ground that his statements were the product of a Fourth Amendment violation, and without the statements there was insufficient evidence to hold him to answer to the charge. The presiding superior court judge denied the motion, finding that the statutory violation did not reach constitutional dimensions. Ex. B at 23, 26 (Feb. 25, 2000).

During in limine proceedings petitioner moved to exclude admission of the statements at trial on Fourth Amendment grounds. The trial court denied the motion, finding that there was no constitutional violation. Ex. B at 17 (Aug. 10, 2000).

On appeal, petitioner argued that the trial court prejudicially erred in refusing to grant the motion to suppress on Fourth Amendment grounds. In a reasoned opinion, the court of appeal held that the statutory violation of Penal Code section 840 did not, by itself, establish that the arrest was unreasonable under the Fourth Amendment, and that, under the totality of the circumstances, the arrest was not unreasonable within the meaning of the Fourth Amendment. Ex. G at 3-8.[5] Petitioner again raised his Fourth Amendment claim in his petition for review in the California Supreme Court. That court denied the petition summarily, without citation or comment.

Simultaneously with his appeal, petitioner filed a state habeas corpus petition, in which he claimed that his trial attorney was ineffective for having conceded that the initial entry of police into the house where they arrested petitioner was lawful because of "hot pursuit" or exigent circumstances. Petitioner claimed that he now had new evidence which showed that the arresting police officer, Officer Midyett, had lied at the preliminary hearing about the circumstances which led him to enter the house. The court of appeal found that petitioner's allegations failed to state a prima facie case of ineffective assistance of counsel, and denied the petition. Ex. G at 4 n.5, Ex. J (appendix A).

---

[5]The last two pages of the appellate court's opinion, pages eight and nine, are missing from respondent's Exhibit G. However, the section of the opinion pertaining to the court's Fourth Amendment analysis is reproduced in full in respondent's memorandum of points and authorities in support of the answer to the petition.

In this federal habeas corpus petition, petitioner claims that the trial court's denial of his motion to suppress violated his Fourth Amendment rights, and also claims that Officer Midyett's alleged perjured testimony rendered the suppression hearing constitutionally infirm.  In its Order to Show Cause, the Court noted that although petitioner's Fourth Amendment claim might be barred by *Stone v. Powell*, 428 U.S. 465 (1976) (discussed in detail below), "his contention that he was not afforded a full and fair opportunity to litigate the issue arguably may take that claim outside the scope of *Powell*."  Accordingly, the Court directed respondent to answer the claim.

*2.   Applicable Federal Law*

*Stone v. Powell* bars federal habeas review of Fourth Amendment claims unless the state did not provide an opportunity for full and fair litigation of those claims.  428 U.S. at 481-82, 494.  Even if the state courts' determination of the Fourth Amendment issues is improper, it will not be remedied in federal habeas corpus actions so long as the petitioner was provided a full and fair opportunity to litigate the issue.  *See Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir.), *cert. denied*, 464 U.S. 933 (1983).  All *Stone v. Powell* requires is the initial opportunity for a fair hearing.  Such an opportunity for a fair hearing forecloses this court's inquiry upon habeas petition into the trial court's subsequent course of action.  *See Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986).  The existence of a state procedure allowing an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's actual use of those procedures, bars federal habeas consideration of those claims.  *See Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990).

Although the *Stone* Court did not specify a test for determining whether a state has provided an opportunity for full and fair litigation of a claim, the Ninth Circuit has held that where a habeas petitioner challenges the state courts' application of the law, the reviewing federal court should consider the extent to which the claims were briefed before, and considered by, the state trial and appellate  courts.  *See Terrovona v. Kincheloe*, 912 F.2d 1176, 1178 -1179 (9th Cir. 1990) (citing *Abell v. Raines,* 640 F.2d 1085, 1088 (9th Cir.1981)), *cert. denied*, 499 U.S. 979 (1991).

### 3. Analysis

The court finds that petitioner's Fourth Amendment claim is barred by *Stone v. Powell*. The record shows that the relevant issues were thoroughly briefed twice at the trial court level, Ex. B at 34-56, 357-67, 516-31, 543-50, and twice rejected following oral argument, Ex. A at 15-26 (Feb. 25, 2000), 6-17 (Aug. 10, 2000). The briefs on appeal on the Fourth Amendment issue are thorough and substantial. Exs. C, H, J. The opinion of the state appellate court rejecting petitioner's claim is carefully considered and well-reasoned. Ex. G at 3-8. Petitioner's petition for review to the California Supreme Court extensively and thoroughly addresses the claim, Ex. H, and that court rejected the claim on the merits (although without a reasoned opinion), Ex. I. *See Ylst,* 501 U.S. at 803 (where the last reasoned opinion on the claim fairly appears to rest primarily upon federal law, it should be presumed that no procedural default has been invoked by a later unexplained order). On this record, it is clear that petitioner was provided an opportunity for full and fair litigation of his claim in state court.

Petitioner's allegation that perjured testimony was offered by the state at his preliminary hearing does not change this conclusion. Such a claim does not call into question the adequacy of the state hearing procedures with which petitioner was provided. Rather, the use of perjured testimony states an independent claim for a violation of due process. *See United States v. Agurs*, 427 U.S. 97, 103 (1976). Accordingly, the Court reviews that claim separately, below.

For these reasons, petitioner's Fourth Amendment claim is DENIED.

### B. *The Use of Perjured Testimony at the Suppression Hearing*

### 1. Background

The California Court of Appeal summarized the facts relevant to the suppression hearing as follows:

> At the preliminary hearing, Officer Midyett testified that, at night, on October 22, 1998, he entered a residence in the 2200 block of 83rd Avenue, in pursuit of a person who had fled into the apartment. Officer Midyett "believed [the person] was a male by the name of Brian Robinson also known as Beehive who had a parole violation warrant." Officer Midyett did not find Robinson, but

> he recognized appellant, who he knew from other contacts, sitting on a couch. Sergeant Longmire had informed Midyett that appellant had an outstanding misdemeanor warrant, and he should arrest appellant when he saw him. Midyett did not recall what time it was when he made the arrest, but appellant was brought to the homicide section of the police department, and Sergeant Longmire was alerted at 12:30 a.m. Appellant's taped interview with Sergeant Longmire began at 4:56 a.m.
>
> Appellant's counsel initially contended that his arrest was illegal under *Payton v. New York* (1980) 445 U.S. 573 [absent exigent circumstances, entry into a private residence to make a warrantless arrest violates the Fourth Amendment]; *People v. Ramsey* (1976) 16 Cal.3d 263 [same rule applies under the California constitution]; and *Steagald v. United States* (1981) 451 U.S. 204 [police must have search warrant to enter third party residence to make an arrest]. Yet, when Midyett testified that he entered the residence in pursuit of a person he believed to be Brian Robinson, a parolee with an outstanding warrant, appellant's counsel stated he had no reason to disbelieve Midyett and conceded that there was "no issue" regarding the lawfulness of the initial entry.

Ex. G at 3-4.

In a petition for state habeas corpus relief filed in conjunction with his appeal, petitioner claimed that he had discovered new evidence which showed that Officer Midyett had lied regarding the circumstances under which he entered the apartment. He referred to testimony given by Midyett in November 1998 at the preliminary hearing of Brian Robinson, the person Midyett had stated he was pursuing when he entered the apartment in which he found, and arrested, petitioner. Petitioner claimed this testimony was inconsistent with Midyett's testimony at petitioner's preliminary hearing in September 1999.

Specifically, at Robinson's preliminary hearing, Midyett testified to the following: (1) on October 24, 1998, the day following petitioner's arrest, Midyett pursued Robinson into the same apartment complex where petitioner had been arrested, on the basis of a parole warrant; (2) Midyett had not had any contact with Robinson for several months prior to Robinson's arrest. Petitioner reasoned that Midyett's testimony that he had had no contact with Robinson for several months prior to his arrest on October 24, 1998 made it impossible for Midyett to have been pursuing Robinson the day earlier, as he testified at petitioner's preliminary hearing. Thus, petitioner argued, in order to justify his "hot pursuit" theory of entry into the apartment where petitioner was arrested, Midyett perjured himself at petitioner's preliminary hearing. Petitioner claimed that Midyett's perjury violated his right to

due process, and that counsel's concession to Midyett's assertion of "hot pursuit," and counsel's failure to further investigate the veracity of Midyett's testimony, constituted the ineffective assistance of counsel.

The state court of appeal rejected petitioner's contention that the new evidence supported a finding that Midyett's testimony was inconsistent:

> Appellant has filed a petition for habeas corpus contending that this concession constituted ineffective assistance of counsel. He argues that Midyett's testimony did not support a finding of hot pursuit or exigent circumstances, and an adequate investigation would have disclosed that Midyett testified at Brian Robinson's preliminary hearing that the last time he had contact with Robinson, prior to Robinson's arrest on October 24, 1998, was when Robinson fled from Midyett several months earlier. Appellant contends Midyett's testimony at Robinson's hearing contradicts his testimony in appellant's case. We find no inherent inconsistency, because Midyett testified that he was chasing a person he believed to be Robinson.

Ex. G at 4 n.5.

*2.     Applicable Federal Law*

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103. Even if the state unwittingly presents perjured testimony, a reviewing court must determine whether "'there is a reasonable probability that [without all the perjury] the result of the proceeding would have been different.'" *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) (internal citations omitted).

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding." *Miller-El,* 537 U.S. at 340; *see Torres v. Prunty,* 223 F.3d 1103, 1107 (9th Cir.2000). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El,* 537 U.S. at 340; *see Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004). This presumption is not altered by the fact that the finding was made by a state court of appeal, rather than by a state trial court. *Bragg v. Galaza,* 242 F.3d 1082, 1087 (9th Cir.),

9

*amended,* 253 F.3d 1150 (9th Cir.2001).  If there is more than one way to interpret the evidence presented in state court, the state court's interpretation of the evidence need not be the most plausible one to survive scrutiny under § 2254(d)(2).  *See Anderson v. Terhune*, 467 F.3d 1208, 1212 (9th Cir. 2006).

    *3.    Analysis*

    The state court of appeal determined that the newly discovered facts presented by petitioner did not evidence an inherent inconsistency in Officer Midyett's testimony.  At Robinson's preliminary hearing, Midyett testified that he had not seen Robinson for several months, but on October 24, 1998, the day after petitioner's arrest, he recognized Robinson standing on the sidewalk in the same block where petitioner had been arrested.  Robinson ran, then entered an apartment in the same apartment complex where petitioner had been arrested.  Midyett followed and apprehended him.  At petitioner's preliminary hearing, Midyett testified that the previous day, on October 23, 1998, he believed that the man he saw run into an apartment was Robinson, but when he entered the apartment it turned out the man he saw sitting with petitioner was not Robinson, and Robinson was not in the apartment.  The state court determined that Midyett's testimony that on the day of petitioner's arrest he *believed* he was chasing Robinson, while the next day he *recognized* Robinson, could be reconciled and was not inherently inconsistent.  This determination was not objectively unreasonable in light of the evidence before the court.

    Because the state court reasonably concluded that Officer Midyett's testimony at petitioner's preliminary hearing was not inconsistent, and therefore was not perjured, petitioner's claim that his preliminary hearing was constitutionally infirm because of perjured testimony is without merit.  Accordingly, this claim for relief is DENIED.

C.    *Ineffective Assistance of Counsel*

    *1.    Background*

    In his state habeas corpus petition, petitioner claimed that trial counsel was ineffective for failing to investigate and discover Officer Midyett's alleged inconsistent testimony, and for conceding that Midyett's testimony at the suppression hearing was

sufficient to establish "hot pursuit." Petitioner attached to his petition a declaration in which his trial counsel declared that he had no information outside the record or tactical considerations for not investigating or challenging the prosecution's hot pursuit theory. *See* Ex. J at 12.

The California Court of Appeal found that petitioner failed to state a prima facie case of ineffective assistance of counsel. First, as discussed above, it determined that Midyett's testimony was not inherently inconsistent. And with respect to petitioner's objection to counsel's concession, it found as follows:

> Nor, was it ineffective assistance to concede that the initial entry did not violate the Fourth Amendment. Midyett, who knew that there was an outstanding warrant for Robinson, first contacted him on a public street and pursued him when he retreated into a residence in an apparent attempt to escape and avoid arrest. When an arrest, or in this case an attempted arrest, is set in motion in a public place, the police may pursue a retreating suspect into a private residence, even if the offense is a mere misdemeanor. (*United States v. Santana* (1976) 427 U.S. 38, 42-43; *People v. Lloyd*, [(1989)], 216 Cal.App.3d 1425, 1429.) The primary case upon which appellant relies, *Welsh v. Wisconsin* (1984) 466 U.S. 740, 749-750, is distinguishable because in that case the police did not initially contact the defendant in a public place. Instead, after identifying the defendant as the driver of a vehicle, who a witness described as possibly intoxicated, the police went to the driver's house, entered and found him lying in bed.
>
> We conclude that appellant has failed to make a prima facie case of ineffective assistance of counsel. We deny his petition for habeas corpus by separate order.

Ex. G at 4 n.5.[6]

*2.    Applicable Federal Law*

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that

---

[6]Petitioner also argues in the instant petition that counsel was ineffective because he "failed to contest or present any defense against the charge of first degree murder." Petition at 2. And in his traverse he argues that counsel was ineffective because he made no objections to the prosecution's arguments regarding robbery and felony-murder. Traverse at 16. None of these claims was presented to the state courts for review; accordingly, they are unexhausted. Moreover, petitioner's conclusory allegations fail to state a colorable federal claim for relief. Accordingly, these claims are DISMISSED. *See* 28 U.S.C. § 2254(b)(2); *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).

11

defense counsel failed to litigate (or properly litigate) a Fourth Amendment claim is not barred by *Stone v. Powell*. *See Kimmelman v. Morrison*, 477 U.S. 365, 373-83 (1986).

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland*, 466 U.S. at 686. In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must make two separate showings. First, he must establish that counsel's performance was deficient, that is, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even establish incompetence under the first prong. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

Second, the petitioner must establish that he was prejudiced by counsel's deficient performance, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the petitioner is challenging his conviction, the appropriate question is "'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Luna v. Cambra*, 306 F.3d 954, 961 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 695). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *Strickland*, 466 U.S. at 697.

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of

the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  *See Williams (Terry) v. Taylor*, 529 U.S. 362, 404-08 (2001).

    *3.    Analysis*

        *a.    Counsel's concession of "hot pursuit"*

In order to establish ineffective assistance of counsel based on defense counsel's failure to litigate a Fourth Amendment issue, petitioner must show that: (1) the overlooked motion to suppress would have been meritorious, and (2) there is a reasonable probability that the jury would have reached a different verdict absent the introduction of the unlawful evidence.  *Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1170 (9th Cir. 2003) (citing *Kimmelman*, 477 U.S. at 375).

Thus, to prevail, petitioner first must show that a motion to suppress based on warrantless entry would have been meritorious if brought in the first instance by trial counsel.  *See id.*  The state court concluded that such a motion would have been denied because the warrantless entry was justified by the exigent circumstances of "hot pursuit."  The court relied upon *United States v. Santana*, 427 U.S. 38, 42-43 (1976), for the proposition that "when an arrest, or in this case an attempted arrest, is set in motion in a public place, the police may pursue a retreating suspect into a private residence, even if the offense is a mere misdemeanor."  Ex. G at 4 n.5.

Petitioner acknowledges that the doctrine of "hot pursuit" is one recognized exigent circumstance to the Fourth Amendment warrant requirement.  *See Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984).  However, he argues that under clearly established Supreme Court precedent, exigent circumstances did not exist here to pursue the man Midyett believed was Robinson into the apartment.  This is because Robinson was being pursued on a parole violator warrant – not after the commission of a crime, and no emergency situation existed requiring police to act quickly.

In *Santana*, the Supreme Court considered whether exigent circumstances were present with respect to the warrantless arrest of a suspect who was first spotted by police in a public place, but then ran into her home.  The Court first made clear that where police

have probable cause to arrest a suspect, they may do so without a warrant in a public place. 427 U.S. at 42. The Court then asked whether the fact of the suspect's retreat into her house "could thwart an otherwise proper arrest." *Id.* It held it could not. *Id.* Rather, an arrest that begins in a public place will not be defeated because the suspect attempts to flee into a private residence. *Id.* at 42-43. In order to satisfy the exigent circumstance of "hot pursuit" the flight of the suspect "need not be an extended hue and cry 'in and about (the) public streets'" *Id.* at 43. It need only involve "some element of a chase." *Id.* at 43 n.3. The Court held that the fact of the suspect's flight, along with the likelihood that she would destroy evidence of the crime she had just committed, justified the warrantless entry and arrest. *Id.*

Although, as noted by petitioner, in *Santana* a crime had just been committed and the need to act quickly involved the potential destruction of evidence, the Supreme Court did not hold that it was limiting the definition of hot pursuit to such circumstances. In its application of the doctrine, the Ninth Circuit has held that the pursuit of a "fleeing suspect" will satisfy the exigent circumstances or "hot pursuit" requirement where the pursuit is continuous, and the underlying crime is a felony. *See United States v. Johnson*, 256 F.3d 895, 907-08 (9th Cir. 2001) (en banc).

Here, it is not disputed that police had probable cause to arrest Robinson on a parole violation warrant, that they first spotted the individual they believed was Robinson in a public place, and that when Robinson spotted them, he fled. There also is no dispute as to whether the pursuit of Robinson was continuous, or whether he was a fleeing felon. Under these circumstances, it is likely that the trial court would have found that Officer Midyett's warrantless entry into petitioner's apartment was lawful, and that it would have denied the motion to suppress even if counsel had not conceded the issue of "hot pursuit."

The state appellate court's determination that Officer Midyett's entry into the apartment where petitioner was arrested was justified by exigent circumstances, and that counsel was not ineffective for conceding this point, was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Accordingly,

14

this claim for relief is DENIED.

          *b.*      *Counsel's failure to investigate*

Petitioner argues that his trial counsel was ineffective for failing to investigate the factual basis for Officer Midyett's assertion that he was in "hot pursuit" of Robinson when he entered the apartment where petitioner was arrested. He claims that the fact that the pursuit of Robinson was not in any of the police reports or discovery provided to counsel, and that it surfaced as a justification for the entry almost a year after the arrest, should have caused counsel to question its accuracy and do some investigation. He maintains that, at a minimum, counsel should have looked to see if there were any police reports or records regarding Robinson's parole violation warrant to see if it really existed. He surmises that if counsel had done so, he would have found court records which showed that Robinson was arrested the day after petitioner and was convicted, he would have discovered the inconsistent testimony given by Officer Midyett at Robinson's preliminary hearing, and he would have used that testimony to impeach Midyett at petitioner's preliminary hearing.

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *See Strickland*, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

Here, the California Court of Appeal found that counsel was not ineffective for failing to investigate Officer Midyett's preliminary hearing testimony further because the facts alleged by petitioner did not support the conclusion that his testimony was inconsistent. This court already has concluded that the state court's decision that there was no inherent inconsistency in Officer Midyett's testimony was not an objectively unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Therefore, counsel's failure to uncover those facts cannot have constituted ineffective assistance, because there is no reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

15

have been different. *Strickland*, 466 U.S. at 694. Accordingly, the court finds that the state court's rejection of petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, 28 U.S.C. § 2254(d)(1), and this claim for relief is DENIED.[7]

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk of the court shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: January 16, 2007

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.03\Carr1369.HabeasOrder.ECK

---

[7] Petitioner argues that this court should not defer to the state court's factual and legal findings because that court failed to fully develop the facts underlying his ineffective assistance of counsel claims. However, there is no indication from the record that the facts underlying these claims were in dispute or required further development. The state court accepted petitioner's factual allegations as true, and found his claims to be without legal merit. In a similar vein, petitioner asks the court to grant him discovery and require respondent to provide a copy of the state habeas petition filed by his appellate counsel, which contains his ineffective assistance of counsel claims and supporting documentation. Again, however, the pertinent portions of Officer Midyett's testimony at petitioner's and Robinson's preliminary hearings is not disputed, and the legal argument in support of petitioner's claims is aptly addressed in the other pleadings lodged with the record. Accordingly, the court finds no need to expand the record. *See* 28 U.S.C. § 2254(e)(2).